**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MAGNOLIA LITTLE,

          Plaintiff,                 Case No.

v.

                                          Hon.

FAMILY HEALTH CENTER,

          Defendant.

---

Noah S. Hurwitz (P74063)
Colin H. Wilkin (P86243)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
colin@hurwitzlaw.com

---

There is no other pending or resolved civil action arising out
of this transaction or occurrence alleged in the Complaint.

### COMPLAINT AND JURY DEMAND

Plaintiff Magnolia Little ("Plaintiff"), by and through her attorneys, HURWITZ LAW PLLC, states the following for her Complaint and Jury Demand against Defendant Family Health Center ("Defendant"):

### INTRODUCTION

1. Defendant violated the law when it rescinded Plaintiff's job offer upon her disclosure that she required a religious accommodation for Defendant's influenza vaccine policy. Following disclosure, Plaintiff promptly completed the requested Calhoun County Health Department waiver education and submitted a religious accommodation request for Defendant's

1

flu vaccine requirement, but Defendant told her they could not accept her request as the "flu shot is a condition of employment."

## PARTIES AND JURISDICTION

2.      Plaintiff is an individual residing in Kalamazoo Michigan, which is located in Kalamazoo County.

3.      Family Health Center is a domestic non-profit corporation that provides healthcare and patient services, and is headquartered in Kalamazoo, Michigan.

4.      Plaintiff's claims arise out of Defendant's violation of Title VII of the Civil Rights Act of 1964 ("Title VII") as well as Michigan's Elliott-Larsen Civil Rights Act of 1976 ("ELCRA"), MCL 37.2101, *et seq*.

5.      The      U.S.      District Court for      the Western      District      of Michigan has jurisdiction over his claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C.  §  2000e,  *et seq*. pursuant  to 28  U.S.C.  §  1331 and supplemental jurisdiction over her Michigan's Persons with Disabilities Civil Rights Act ("PWDCRA"), MCL. § 37.1101 *et seq*. claim pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in the Western District of Michigan pursuant to 28 U.S.C. § 1391(e), as it is the district where the Plaintiff resides.  28 U.S.C. § 1391(e).

7.      Plaintiff filed charges with the Equal Employment Opportunity Commission and received Notice of Right to Sue on February 20, 2026.

## FACTUAL ALLEGATIONS

### Defendant's Vaccine Policy

8.      Defendant is a provider of healthcare and patient services.

2

9.      Defendant enforces an inflexible flu vaccine policy that obligates employees and job-applicants to be vaccinated from the flu regardless of work location, remote status, or responsibilities.

10.     Defendant's requirement is absolute; it offers no alternative, such as periodic testing, mask wearing, social distancing, etc.

**Plaintiff's Employment Application and Religious Accommodation Request**

11.     In April 2025, Plaintiff was offered a position in the call center at Family Health Center.

12.     During Plaintiff's interview, she proactively disclosed that she would need a religious accommodation from any vaccination requirements, to which the interviewer responded, "Oh that's fine, you just ask HR for that."

13.     Based on the assurance from the interviewer and the job offer from Defendant, Plaintiff quit her current position and declined other employment opportunities to accept Defendant's offer.

14.     On April 16, 2026, Plaintiff was notified that the Company required a flu vaccine record.

15.     On April 21, 2026, Plaintiff emailed Human Resources Generalist Jordan Cervantes stating, "I am wondering if I can request a religious exemption for the flu vaccine. Are you able to provide me with the non-medical waiver form?"

16.     The request was forwarded to Human Resources Manager Matt Rudolph, who informed Plaintiff that Defendant was "still taking this under consideration and hope to have an answer to you in the next few days."

3

17.     Rather than engaging in meaningful discussion about Plaintiff's religious beliefs or exploring potential accommodations, Mr. Rudolph directed Plaintiff to pursue a non-medical waiver through the Kalamazoo County Health Department, a process designed for children attending school, not adults seeking employment action.

18.     Plaintiff complied with Defendant's direction and contacted both the Kalamazoo County and Calhoun County Health Departments and completed the immunization waiver education through the Calhoun County Health Department.

19.     Plaintiff was informed by the Health Department staff that "the waiver approval she provides is for children and adults have to request the waiver approval from their place of employment."

20.     On April 23, 2025, Plaintiff submitted a formal written religious accommodation request explaining her sincerely held religious belief that prevents her from receiving the flu vaccine. She also provided a supporting letter from a family member attesting to her long-standing religious commitment to avoid vaccinations.

21.     On April 28, 2025, Mr. Rudolph informed Plaintiff that her request had been forwarded to the Chief Medical Officer for review.

22.     Defendant did not contact Plaintiff to discuss the nature of her religious beliefs, the sincerity of those beliefs, or potential alternative accommodations that might address Defendant's concerns.

23.     On May 1, 2025, Plaintiff asked Defendant if she could work remotely, noting that she "would be a great fit for the position" but "as an adult, I have not had any vaccines because of my beliefs."

24.    Mr. Rudolph rejected this option: "the role is an on-site job and not remote so that would not be possible at this time."

25.    The following day, Plaintiff offered to wear a mask during her entire shift. Mr. Rudolph again denied this alternative accommodation after consulting with Dr. Whatley, the Chief Medical Officer.

26.    On May 5, 2025, Defendant rescinded Plaintiff's job offer entirely. Mr Rudolph stated: "The flu shot is a condition of employment. I understand you do not wish to proceed with the shot. Therefore, you would be declining to move forward with the position based on that condition of employment and the position would not longer be available."

27.    The statutory framework for determining reasonable accommodation requires an interactive process and participation by both the employer and the employee. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986) (stating that, consistent with the goals expressed in the legislative history of the religious accommodation provision, "courts have noted that bilateral cooperation is appropriate in the search for an acceptable reconciliation of the needs of the employee's religion and the exigencies of the employer's business").

28.    "Once an employee makes [an accommodation] request, the employer is obligated by law to engage in an interactive process — a meaningful dialogue." *Equal Emp. Opportunity Comm'n v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 621 (5th Cir. 2009).

29.    Defendant did not request nor suggest that Plaintiff participate in any discussion to determine a fair and legal accommodation.

30.    Defendant implements a blanket policy to deny all religious and medical accommodation requests.

31.     Defendant never indicated to Plaintiff that accommodating her religious beliefs poses an undue burden.

32.     Defendant denied Plaintiff's employment application without ever engaging in the interactive process.

33.     Defendant refused to hire Plaintiff because of her sincerely held religious beliefs.

34.     But-for Plaintiff's vaccination status, she would have been employed by Defendant.

35.     Employees and job applicants must therefore choose vaccination or adverse action. "Forcing individuals to choose between their faith and their livelihood imposes an obvious and substantial burden on religion . . . vaccine mandates . . . presents a crisis of conscience for many people of faith.  It forces them to choose between the two most profound obligations they will ever assume—holding true to their religious commitments and feeding and housing their children.  To many, this is the most horrifying of Hobson's choices." *Sambrano v. United Airlines, Inc.*, 19 F.4th 839, 841 (5th Cir. 2021).

36.     Defendant sabotaged the interactive process and evaded any sort of bilateral cooperation.

37.     Defendant failed to explain why Plaintiff's religious accommodation request was never considered.

38.     Defendant has no "satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962).

39.     Plaintiff could have worn a mask during the entire duration of her shift.

40.     Plaintiff could have tested frequently for the flu.

41.     Plaintiff could have worked remotely.

6

42.     Plaintiff attempted to engage in an interactive process with Defendant in order to explore these options.  She was denied any sort of bilateral compromise.

## COUNT I
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*
### RELIGIOUS DISCRIMINATION – FAILURE TO ACCOMMODATE

43.     Plaintiff restates the foregoing paragraphs as set forth fully herein.

44.     At all times relevant hereto, Plaintiff was a prospective employee and Defendant was an employer for the purposes of 42 U.S.C. § 2000e, *et seq*.

45.     Title VII of the Civil Rights act of 1964, 42 U.S.C. § 2000e *et seq*., makes it unlawful for an employer to fail or refuse to reasonably accommodate the religious beliefs and practices of an employee or prospective employee.

46.     Title VII prohibits an employer from discriminating against an employee "because of such individual's... religion." 42 U.S.C. § 2000e-2(a)(1).

47.     This "includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that [it] is unable to reasonably accommodate an employee's... religious observance or practice without undue hardship on the conduct of the employer's business." *Id*. § 2000e(j).

48.     After receiving an accommodation request, "the employer is obligated by law to engage in interactive process – a meaningful dialogue with the employee[.]" *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

49.     The employer must act in "good faith," *Id*., and the employee must "make a good faith attempt to satisfy his needs through means offered by the employer," *Brener v. Diagnostic Ctr. Hosp*., 671 F.2d 141, 146 (5th Cir. 1982).

50.     Title VII makes it unlawful for an employer to retaliate against an employee who

engaged in protected activity.

51.     Plaintiff holds sincere *bona fide* religious beliefs that preclude her from receiving a flu vaccine.

52.     Plaintiff informed Defendant of those beliefs and requested religious accommodation from the vaccine mandate.

53.     Defendant refused to engage in the interactive process with Plaintiff regarding her religious accommodation requests.

54.     Under Title VII, Plaintiff can establish a *prima facie* case of religious discrimination based on a failure to accommodate by showing: (1) she has a *bona fide* religious belief that conflicts with an employment requirement; (2) about which she informed the [Defendant]; and (3) she suffered an adverse employment action for failing to comply with the conflicting employment requirement. *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 69 (1986).

55.     Multiple accommodations could have been offered to Plaintiff.  They include mask wearing and periodic testing for influenza.

56.     A "[r]easonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995).

57.     Defendant would not suffer undue hardship by granting Plaintiff an accommodation. 42 U.S.C. § 2000e(j).

58.     The issue became moot when Defendant failed to engage each employee in "a meaningful dialogue" about the accommodation request and learn whether an acceptable accommodation would impose undue hardship.  *Chevron Phillips Chem. Co.*, 570 F.3d at 621 (5th Cir. 2009).

59.    Instead, Defendant announced a one-size-fits all approach to accommodation that deprived Plaintiff of the conversation necessary to discover what accommodations were possible. *Bultemeyer v. Fort Wayne Cmty. Schs.*, 100 F.3d 1281, 1285 (7th Cir. 1996) ("courts should look for signs of failure to participate in good faith or failure by one of the parties to help the other party determine what specific accommodations are necessary" and "[a] party that fails to communicate... may also be acting in bad faith").

60.    Irrespective of the interactive process, Defendant failed to provide Plaintiff with reasonable accommodations for her religious beliefs.

61.    Defendant thereby discriminated against Plaintiff because of her religious beliefs.

62.    Defendant's failure to provide religious accommodations has harmed and will continue to harm Plaintiff.

63.    As a direct and proximate result of Defendant's violation of Title VII Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and the physical effects associated therewith, and will so suffer in the future.

64.    As a further direct and proximate result of Defendant's violation of Title VII, Plaintiff has been denied employment and placed in financial distress and have suffered a loss of earnings and benefits, and a loss of and impairment of their earning capacity and ability to work and will so suffer in the future; she has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

65.    By failing to engage in the interactive process or offer any reasonable accommodation, Defendant's discriminatory actions were intentional and/or reckless and in violation of Title VII.

## COUNT II
### Violation of Title VII, 42 U.S.C. § 2000e, *et seq*.
### DISPARATE TREATMENT DISCRIMINATION

66.     Plaintiff restates the foregoing paragraphs as set forth fully herein.

67.      "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a prima facie case of indirect discrimination by showing (1) they were a member of a protected class, (2) they experienced an adverse employment action (3) they were qualified for the position, and (4) they were replaced by a person outside of the protected class or were treated differently than similarly situated employees."  Tepper v. Potter, 505 F.3d 508, 515 (6th Cir. 2007).

68.     Plaintiff espoused religious beliefs and is therefore a member of a protected class.

69.     Defendant directly discriminated against Plaintiff by terminating her after she stated her sincerely held religious beliefs that conflicted with Defendant's subjected standard of religiosity.

70.     Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

71.     Defendant prohibited Plaintiff from in-person work before terminating her employment.

72.     It is undisputed that Plaintiff was qualified for the position.

73.     Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite not being vaccinated.

74.     Plaintiff was terminated and replaced with a person of different religious beliefs.

75.     Plaintiff can also proceed on a mixed-motive claim by demonstrating that her protected status was a motivating factor in Defendant's decision to rescind her job offer, even

though other factors also could have motivated that decision.

76.     "[A] plaintiff may prove a Title VII mixed-motive case by either direct or circumstantial evidence." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 398 (6th Cir. 2008).

77.     "[A] plaintiff need only present sufficient evidence for a reasonable jury to conclude, by a preponderance of the evidence, that 'race, color, religion, sex, or national origin was a motivating factor for any employment practice.'" *Id.* (quoting *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101 (2003) (quoting 42 U.S.C. § 2000e–2(m)).

78.     Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the denial of their requests and will so suffer in the future.

**COUNT III**
**VIOLATION OF TITLE VII, 42 U.S.C. § 2000e, *et seq*.**
**Religious Discrimination – Failure and Refusal to Hire**

79.     Plaintiff restates the foregoing paragraph as set forth fully herein.

80.     Title VII prohibits an employer from discriminating against an employee "because of an such individual's . . . religion." 42 U.S.C. § 200e-2(a)(1).

81.     Title VII's definition of "religion" includes "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

82.     Plaintiff can establish *prima facie* cases of discrimination by showing (1) they hold sincere religious beliefs that conflict with an employment requirement; (2) they informed their employer of same; and (3) they were terminated for failing to comply with the employment requirement. *Yeager v. FirstEnergy Generation Corp,* 777 F.3d 362, 363 (6th Cir. 2015).

83.     Plaintiff holds a sincere religious belief that precludes her from taking the flu vaccine.

11

84.     Plaintiff informed Defendant of the same.

85.     Defendant refused to hire Plaintiff based on the need for religious accommodation.

86.     Defendant evaded any sort of "bilateral cooperation." *Ansonia Bd. Of Educ. v. Philbrook,* 479 U.S. 60, 69 (1986).

87.     Defendant could have offered Plaintiff multiple reasonable accommodations without undue hardship.

88.     Defendant never explained why it could not accommodate Plaintiff.

89.     Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of Defendant's failure to hire her.

Defendant's actions were intentional and/or reckless.

**COUNT IV**
**VIOLATION OF ELCRA, MCL 37.2101, *et seq.***
**DISPARATE TREATMENT AND INTENTIONAL DISCRIMINATION**

90.     Plaintiff incorporates the foregoing paragraphs by reference herein.

91.     Plaintiff holds sincere religious beliefs that conflict with Defendant's flu vaccine mandate.

92.     Plaintiff informed Defendant how these sincerely held religious beliefs conflicted with Defendant's flu vaccine mandate.

93.     "To assert a successful claim of religious discrimination . . . a plaintiff must either present direct evidence of discrimination, or, in the absence of direct evidence, present a *prima facie* case of indirect discrimination by showing that the employee (1) was a member of a protected class; (2) experienced an adverse employment action; (3) was qualified for the position; and (4) was replaced by a person outside of the protected class or that the employee was treated differently

12

than similarly situated employees." *Tepper v. Potter*, 505 F.3d 508, 515 (6th Cir. 2007).

94.    Defendant directly discriminated against Plaintiff by rescinding her job offer after the she espoused sincerely held religious beliefs that conflicted with Defendant's policy.

95.    Defendant allowed other unvaccinated employees without Plaintiff's same religious beliefs to be exempted from Defendant's vaccine mandate policy.

96.    Plaintiff's sincerely held religious beliefs qualify the employee as a member of a protected class.

97.    Plaintiff was qualified for the position.

98.    Plaintiff was treated differently than similarly situated employees with different religious beliefs who were allowed to continue working despite being unvaccinated.

99.    Plaintiff was terminated and replaced with a person of different religious beliefs.

100.    Defendant also terminated Plaintiff based on Defendant's own subjective standard of religiosity, thus directly discriminating against Plaintiff's unique sincerely held spiritual beliefs.

101.    EEOC Guidance states that ("[t]he definition of 'religion' under Title VII protects both traditional and nontraditional religious beliefs . . . including those that may be unfamiliar to employers.")

102.    The law on religious discrimination states that religious beliefs need not be "acceptable, logical, consistent or comprehensible to others" and the law "leaves little room for a party to challenge the religious nature of an employee's professed beliefs."). *E.E.O.C. v. Union Independiente de la Autoridad de Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002).

103.    Defendant defied the law when it determined that some religious beliefs of its employees were valid and while others were bogus.

13

104.    Again, Plaintiff can proceed on a mixed-motive claim by demonstrating that her protected status was a motivating factor in Defendant's decision to rescind Plaintiff's job offer, even though other factors also could have motivated that decision.

105.    In discovery, Plaintiff will be able to investigate which types of religious beliefs Defendant found were acceptable and which types of religious beliefs Defendant discriminated against, thereby establishing evidence probative of discriminatory intent.

106.    Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, embarrassment, and the physical effects associated therewith because of the termination and will so suffer in the future.

**COUNT V**
**Violation of the ELCRA, MCL 37.2101, *et seq*.**
**Religious Discrimination – Failure and Refusal to Hire**

107.    Plaintiff restates the foregoing paragraphs as set forth fully herein.

108.    Pursuant to ELCRA, MCL 37.2202(1) it is unlawful for an employer to: "(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion[.]; or (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion[.]"

109.    Defendant's mandatory vaccination policy evades any sort of bilateral cooperation or interactive process.

110.    Simply by failing to engage with Plaintiff as to the possible reasonable accommodations, Defendant has violated the law.

14

111.    Plaintiff engaged in protected activity when she requested religious accommodations from Defendant's vaccine mandate.

112.    Defendant responded by advising Plaintiff to receive a non-medical waiver through the Kalamazoo and Calhoun County Health Departments.

113.    Upon receipt of Plaintiff's waiver, Defendant responded almost immediately by rescinding her offer of employment.

114.    Defendant failed and refused to hire Plaintiff due to her sincerely held religious beliefs.

115.    Plaintiff's religious beliefs and protected activity were the causes of Defendant's retaliation and adverse employment action.

116.    This violation has harmed and continues to harm Plaintiff.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter the following relief:

a.    Declare that Defendant has violated ELCRA and Title VII of the Civil Rights Act of 1964 by failing to engage in the interactive process in response to requests for accommodation to its flu vaccine mandate.

b.    Declare that Defendant has violated ELCRA and Title VII of the Civil Rights Act of 1964 by discriminating against Plaintiff by failing to provide reasonable accommodations to its flu vaccine mandate.

c.    Award Plaintiff damages, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

d.    Award Plaintiff reasonable attorneys' fees and costs.

e.    Grant any other relief that the Court deems just, proper, and equitable.

Respectfully submitted,

HURWITZ LAW PLLC

/s/ *Noah S. Hurwitz*
Noah Hurwitz (P74063)
Attorneys for Plaintiff
340 Beakes St., Ste. 125
Ann Arbor, MI 48104
(844) 487-9489
*noah@hurwitzlaw.com*

Dated: March 31, 2026

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MAGNOLIA LITTLE,

        Plaintiff,                  Case No.

v.

                                      Hon.

FAMILY HEALTH CENTER,

        Defendant.

Noah S. Hurwitz (P74063)
Colin H. Wilkin (P86243)
HURWITZ LAW PLLC
*Attorneys for Plaintiff*
340 Beakes St. STE 125
Ann Arbor, MI 48104
(844) 487-9489
noah@hurwitzlaw.com
colin@hurwitzlaw.com

## DEMAND FOR TRIAL BY JURY

    Plaintiff, Magnolia Little, by and through her attorneys, Hurwitz Law PLLC, hereby

demands a trial by jury in the above-captioned matter for all issues triable.

                                    Respectfully Submitted,
                                    HURWITZ LAW PLLC

                                    */s/  Noah S. Hurwitz*
                                    Noah S. Hurwitz (P74063)
                                    *Attorney for Plaintiff*

Dated: March 31, 2026

17